FILED
2017 May-12  AM 11:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TONYA M. BREWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER: |
| | ) | CV-17- |
| | ) | JURY DEMAND |
| | ) | |
| CHARTER COMMUNICATIONS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

# **COMPLAINT**

## I.    **JURISDICTION**

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202 and  the Act of Congress known as the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981.  The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 §2000e *et seq.* and 42 U.S.C. §1981 providing for injunctive and other relief against sex discrimination and retaliation in employment.

1

2.    The plaintiff filed her sex discrimination and retaliation suit within 180 days of the discriminatory treatment and ninety (90) days from the receipt of her right-to-sue letter from the EEOC.

## II.   PARTIES

3.    Plaintiff, Tonya M. Brewer (hereinafter "Brewer" or "plaintiff"), is a female citizen of the United States and a resident of the State of Alabama.   The plaintiff was employed by the defendant at one of its Jefferson County, Alabama location.

4.    Defendant, Charter Communications (hereinafter "Charter" or "defendant"), is a corporation doing business in Alabama, and is an entity subject to suit under 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.  The defendant employs at least fifteen (15) persons.

5.    Charter was founded in 1992 and is among the largest broadband companies in the nation, providing a full range of advanced broadband services (including video, data, high-speed internet, and telephone) to nearly six million customers in 28 states.  Charter currently employs in excess of 25,000 individuals situated at system and satellite office locations across the nation.  Charter maintains a presence in every market in which Charter offers its services and products, including in the Vestavia Hills, Alabama location where the plaintiff was employed.

2

### III.   CAUSES OF ACTION

6.      The plaintiff re-alleges and incorporates by reference paragraphs 1-5 with the same force and effect as if fully set out in specific detail hereinbelow.

7.      The plaintiff has been discriminated against because of her sex, female, in discipline, termination and other adverse terms and conditions of employment. The plaintiff was also terminated in retaliation for her engagement in protected activity, i.e., making complaints of discrimination.

8.      The plaintiff was employed by the Defendant from July 2000 until her discriminatory and retaliatory discharge on June 30, 2015.

9.      During the plaintiff's employment, she held the positions of Broad Band Coordinator, Telephone Operations Manager, and State Dispatch Manager, which was her position when she was terminated.

10.     Throughout the plaintiff's employment, she received nothing less than "meets expectations" during her yearly reviews.

11.     In January 2015, Neil Jaradat, male, Director of Workforce, became the plaintiff's supervisor.  During a meeting on January 29, 2015 in Nashville, Mr. Jaradat praised the plaintiff's work and stated she was doing a great job.

12.     In March 2015, the plaintiff informed Mr. Jaradat that she was going through a divorce.

3

13.    In March of 2015, the plaintiff was asked to drive to Jaradat's office in Tennessee in order to receive her 2014 Performance Review. After the meeting, they decided to get lunch before she drove back to Birmingham. During their discussion at lunch, Jaradat inquired about a few of the dispatch employees that he had interacted with while visiting the Vestavia Hills office in January and February. He suggested that in the future maybe the plaintiff's hiring should "better reflect the demographics of Vestavia Hills." The plaintiff was unsure of how to respond to his statement; however, she took it as to hire more Caucasian employees. The plaintiff reported this conversation to the HR generalist when she returned to the office as a precautionary step because she was uncomfortable and felt Mr. Jaradat's comments were racially discriminatory.

14.    At the end of March 2015, the plaintiff did a shift bid. Mr. Jaradat complained to HR. Mr. Jaradat wanted the plaintiff to write up her supervisors, which were predominately African-Americans. The plaintiff refused to do this as there was no reason for said write-ups. Mr. Jaradat immediately quit speaking to the plaintiff and stop coming to Birmingham.

15.    On June 4, 2015, the plaintiff was required to drive to Nashville by Mr. Jaradat. At this time, he issued the plaintiff a verbal warning for failure to communicate. He then canceled the weekly meeting.

4

16.    The plaintiff met with the local HR generalist in March following a team meeting with her supervisors in which Jaradat was in attendance. After the meeting, 3 of the 4 supervisors expressed concern that the tone used by Jaradat in the meeting came across as demeaning.    The plaintiff told them that she would talk to HR and advised them to do the same if they felt it was necessary.  While discussing this issue with the local HR generalist, the plaintiff did express her concerns that she felt, since learning of her pending divorce, her working relationship with Jaradat had been strained.  When asked if there was anything specific that made her feel this way, the plaintiff explained that, at this time, it was just the overall tone and general interactions had become more negative for lack of a better word.  The HR generalist told the plaintiff to make sure she documented any changes going forward and that if she felt it was becoming an issue to come back and they would look at her options.

17.    The plaintiff had similar discussions with the HR generalist in April and May regarding the increased hostility that she felt coming from Jaradat and that she was beginning to feel as if she was being targeted by him.  At the end of one such discussion around the 27th of May, the HR generalist asked if the plaintiff had considered filing an Ethics Point complaint on Jaradat.  At that time, the plaintiff had not because she had hoped that the working relationship would be repaired.  After the June 4th meeting in Tennessee and the subsequent cancellation of the weekly one-on-

5

one meetings, the plaintiff again found herself speaking to the HR generalist about the situation with the CAR and her working relationship with Jaradat. At this time, he suggested that the plaintiff move forward with the Ethics Point because he did not think the issue would be addressed locally. The plaintiff called the Ethics Point line on June 10 to file her complaint.

18.     The plaintiff went on vacation June 17 – 19 and while out she received several calls from her supervisors because they had become uncomfortable with various conversations that each had with Jaradat on Wednesday, June 17. They were concerned that his line of questioning was being done in a manner to try and "force me [plaintiff] out." The plaintiff called the HR generalist and relayed this information. When the plaintiff returned to the office on Monday, June 22nd, she again called the Ethics Point number to update the complaint with the information from the calls on June 17.

19.     Mr. Jaradat is of Jordanian descent and, during the plaintiff's employment, he made several degrading comments about females.

20.     On June 30, 2015, ten days after the plaintiff's complaint to the Ethics Point Line, she was called into a meeting with Mr. Jaradat, the Regional HR Director and Local HR Director. The plaintiff was told that there had been performance issues and they had decided to end her career with Defendant. The plaintiff asked for

6

specific performance issues they had with her and her performance and they had none.

21.    The Defendant has a progressive discipline policy that states an employee receives a verbal warning, 2 written warnings, a final warning and then termination.  The Defendant also has an option of issuing a PIP.  However, this progressive discipline policy was not followed in the plaintiff's case.

22.    During the meeting when the plaintiff was terminated, the Regional HR Director told her that they were aware of the complaint she filed against Mr. Jaradat and it had nothing to do with her termination.

23.    On information and belief, another female filed an Ethics Point regarding Jaradat's communication style and tone.  This female also thought Jaradat was demeaning towards females.

24.    The defendant's proffered reasons for plaintiff's termination were pretext for sex discrimination and retaliation.

25.    The plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, an injunctive and declaratory judgment is her only means of securing adequate relief.  The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

7

## IV.    **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant are violative of the rights of the plaintiff as secured by 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

2.    Grant plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

3.    Enter an order requiring the defendant to make the plaintiff whole by awarding her the position she would have had occupied in the absence of sex discrimination and retaliation, back-pay (plus interest), front-pay, punitive and compensatory damages and/or nominal damages, declaratory and injunctive relief, and benefits.

4.    The plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

8

Respectfully submitted,

_____
Gregory O. Wiggins
Counsel for the Plaintiff

OF COUNSEL:

WIGGINS, CHILDS, PANTAZIS,
     FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

**DEFENDANT'S ADDRESS:**

Serve via certified mail:

Registered Agent:
     Charter Communications, Inc.
     CSC-Lawyers Incorporating Service
     150 S Perry Street
     Montgomery, Alabama 36104